FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2017 JAN 27 PM 1: 17

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17 - CV - 00260
(To be supplied by the court)

HEATHER PRICE
10200 E. Dry Creek Rd. #8115
Englewood, CO 80112
Plaintiff,

v.

Bavarian INN
490 S. Colorado Blvd.
Glendale, CO 80246
Defendant.

---

## TITLE VII COMPLAINT

---

### PARTIES

1. Plaintiff _HEATHER PRICE_ is a citizen of _United States_
who presently resides at the following address:
_10200 E DRY CREEK RD. #8115 Englewood, CO 80112_

2. Defendant _Bavarian INN_ lives at or is located at the following address:
_490 S. Colorado Blvd. Glendale, CO 80246_

Attach a separate page, if necessary, to list additional parties.

### JURISDICTION

3. Jurisdiction is asserted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C.
' 2000e-5.

4. Defendant is an employer within the meaning of Title VII.

5. The alleged unlawful employment practices took place at the following location:
_490 S. Colorado Blvd. Glendale, CO 80246_

(Rev. 07/06)

6.      Jurisdiction also is asserted pursuant to the following statutory authority:

_____ *42 U.S.C. 2000(e) ET SEQ & the Colorado anti-discrimination Act.*

## ADMINISTRATIVE PROCEDURES

7.      Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission or other appropriate administrative agency on _____ *10-9-2015* (date) regarding the alleged discriminatory conduct by Defendant(s).

8.      Plaintiff received from the Equal Employment Opportunity Commission or other appropriate administrative agency a Notice of Right to Sue the Defendant(s) on _____ *11·21·2016* _____ (date). (Please attach to the complaint a copy of the Notice of Right to Sue.)

## NATURE OF THE CASE

9.      Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

_____ Race                      ___ Color                      _____ Religion

✗ Sex                       ___ National Origin

_____ Other (please specify) _____

10.     Defendant has discriminated against Plaintiff because of the following: (please check all that apply)

_____ Failure to hire

_____ Failure to promote

✗ Demotion/discharge from employment

_____ Other (please specify)   *See attached charge of discrimination*

(Rev. 07/06)

**FIRST CLAIM FOR RELIEF
AND SUPPORTING FACTUAL ALLEGATIONS**
(Please number your paragraphs and attach any necessary additional pages.
Alternatively, you may attach to the complaint a copy of the charge of discrimination
you submitted to the Equal Employment Opportunity Commission.)

**SECOND CLAIM FOR RELIEF**
**AND SUPPORTING FACTUAL ALLEGATIONS**
(Please number your paragraphs and attach any necessary additional pages.)

(Rev. 07/06)

4

**THIRD CLAIM FOR RELIEF
AND SUPPORTING FACTUAL ALLEGATIONS**
(Please number your paragraphs and attach any necessary additional pages.)

(Rev. 07/06)                                    5

## REQUEST FOR RELIEF

Plaintiff requests the following relief:

Date: *1.27.17*

_____
Heather Brice
(Plaintiff=s Original Signature)

10200 E. dry creek rd #8115
(Street Address)

englwrd    Co   80112
(City, State, ZIP)

303. 868 · 1115
(Telephone Number)

| CHARGE OF DISCRIMINATION<br>The Privacy Act of 1974 affects this form.<br>See Privacy Act Statement before completing this form. | EEOC Charge No.<br>846-2015-30840N<br>CCRD Charge No. |
|---|---|

| *COLORADO CIVIL RIGHTS DIVISION AND EEOC* | | |
|---|---|---|
| Name *(Charging Party)*<br>Heather Price | | (Area Code) Telephone<br>(303) 868-1115 |
| Street Address<br>10200 E Dry Creek Road, Unit 6310 | City, State, and Zip Code<br>Englewood, CO 80112 | County<br>Arapahoe |

The Employer, Labor Organization, Employment Agency, Apprenticeship Committee, State or Local Government Agency who discriminated against me is:

| Name *(Respondent)*<br>Bavaria Inn Restaurant | Number of Employees<br>20+ | (Area Code) Telephone<br>(303) 835-0715 |
|---|---|---|
| Street Address<br>490 S. Colorado Blvd | City, State, and Zip Code<br>Glendale, CO 80246 | County<br>Arapahoe |
| Discrimination Based on:<br>Sex, Age, Retaliation | Date Most Recent Discrimination Occurred<br>June 10, 2015 | |

**I.    Jurisdiction:** The Colorado Civil Rights Division has jurisdiction over the subject matter of this charge; that each named Respondent is subject to the jurisdiction of the Colorado Civil Rights Division and is covered by the provisions of the Colorado Revised Statutes (C.R.S. 1973, 24-34-301, et. seq.), as reenacted.

**II.    Personal Harm:** That on or about May 5, 2015, I was harassed by Randy Thorton because of my sex (female) while in the position of Concierge. That on or about June 1, 2015, and prior thereto, I was subjected to unequal terms and conditions of employment because of my age/42 (7-31-73). That on or about June 4, 2015, I was demoted because of my age and/or in retaliation for engaging in protected activity. That on or about June 10, 2015, I was discharged because of my age and/or in retaliation for engaging in protected activity.

**III.    Respondent's Position:** Unknown.

**IV.    Discrimination Statement:** I believe I was unlawfully discriminated against because: of my sex, age, and/or in retaliation for engaging in protected activity in violation of the Colorado Anti-Discrimination Act (CADA). 1) I was hired by the Respondent as a Concierge in or around June 2014, and at all times performed satisfactorily. 2) During my employment, Randy Thorton, Manager, subjected me to sexual harassment in front of customers. In particular, on or about May 5, 2015, Thorton twice grabbed my buttocks and asked me to prove that I was wearing underwear in front of customers. 3) In or around May 2015, Brian Barker, Manager, and Desi Febre, a co-worker, began dating. 4) Barker is responsible for making the concierge and server schedules. On or about June 1, 2015, Barker took one of my three shifts away and gave it to Febre. Barker also removed me from cigar dinner shifts. When I asked Barker why, he told me to "Shut the fuck up. That's just how it's going to be." 5) On or about June 4, 2015, I met with Manager Hopi Mondale and Barker regarding the shift reduction and complained about Barker's favoritism towards Febre. During this meeting, I was informed that my position as concierge was being abolished and I would be demoted to a server. 6) That same day, I overheard Barker referring to me as "old" with a customer. The majority of my co-workers are 20 years younger than me. 7) The next week, on or about June 10, 2015, I was told by Thorton that "things just weren't working out" and I was terminated. I believe I was discriminated against because of my sex, age, and/or in retaliation for engaging in protected activity.

**V.    WHEREFORE:** The Charging Party prays that the Colorado Civil Rights Division grant such relief as may exist within the Division's power and which the Division may deem necessary and proper.

I want this charge filed with both the Equal Employment Opportunity Commission and the State or local agency, if any. I will advise the agency if I change my address or telephone number, and I will cooperate fully with them in

the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the foregoing is true and correct.

Date                        Charging Party/Complainant (Signature)



COLORADO
**Department of
Regulatory Agencies**
Colorado Civil Rights Division

1560 Broadway Street, Suite 1050
Denver, CO 80202

## Charge No. D20160048

Heather Price
10200 East Dry Creek Road, Unit 6310
Englewood, CO 80112                              Complainant

Bavaria Inn Restaurant
d/b/a Shotgun Willie's
490 South Colorado Blvd
Glendale, CO 80246                               Respondent

## DETERMINATION

Under the authority vested in me by <u>C.R.S. 24-34-306 (2),</u> I conclude from our investigation that there is sufficient evidence to support one the Complainant's claims of harassment based on her sex, and for discharge in retaliation for engaging in protected activity. As such, a **Probable Cause** determination is hereby issued for these claims. I conclude from our investigation that there is insufficient evidence to support the Complainant's remaining claims of discrimination. As such, a **No Probable Cause** determination is hereby issued for these claims.

The Respondent is an employer within the meaning of C.R.S. 24-34-401 (3), as re-enacted, and the timeliness and all other jurisdictional requirements pursuant to Title 24, Article 34, Parts 3 and 4 have been met.

The Complainant alleges that on or about on or about May 5, 2015, she was harassed by Supervisor, Randy Thornton, because of her sex (female), while in the positon of Concierge. The Complainant also alleges that on or about June 1, 2015, she was subjected to unequal terms and condition of employment because of her age 42 (D.O.B. 7/31/1973) and sex, and subjected to harassment by Supervisor, Brian Barker, because of her sex. The Complainant further alleges that on or about June 4, 2015, she was demoted because of her age and/or in retaliation for engaging in protected



activity. Finally, the Complainant alleges that on or about June 10, 2015, she was discharged because of her age, sex, and/or in retaliation for engaging in protected activity.

The Respondent denies the allegations of discrimination and avers that the conduct of Randy Thornton was appropriate in order to protect the Respondent's business interests. The Respondent denies that it subjected the Complainant to unequal terms or conditions of employment or harassment by Brian Barker. The Respondent states that the Concierge position was eliminated and its subsequent offer of a Waitress position was a lateral move, and affected all Concierges equally. Finally, the Respondent contends that the Complainant was discharged for threatening another employee.

The legal framework under which civil rights matters are examined is as follows: The Complainant bears the burden of proving that discrimination has occurred. Each key or essential element ("prima facie") of the particular claim must be proven, through a majority ("preponderance") of the evidence. If the Complainant meets this initial burden of proof, then the Respondent has the burden of explaining, with sufficient clarity, a non-discriminatory justification for the action taken. This is in response to the specifically alleged action named in the charge. In addition, the Respondent has the burden to produce documents and other information requested by the administrative agency during the civil rights investigation. If the Respondent offers a non-discriminatory reason, then the burden once again shifts back to the Complainant to prove that this proffered legitimate reason is merely a pretext for discrimination. At this stage, the Complainant must prove, again through sufficient evidence, that the true and primary motive for the Respondent's actions is unlawful discrimination.

"Unlawful discrimination" means treatment that is primarily based on the Complainant's asserted protected group or status. The Respondent's stated reasons for its actions are presumed to be true, unless and until the Complainant, again through a preponderance of the evidence in the record, adequately shows that the Respondent's reason is pretext (i.e., is not to be believed), and that the Complainant's protected status was the main reason for the adverse action taken. The Complainant does not need to submit additional evidence, in response to the Respondent's position, but the available evidence must be legally sufficient so that a reasonable person would find that the Respondent intended to discriminate against the Complainant because of his/her protected civil rights status. See Colorado Civil Rights Commission v. Big O Tires, Inc., 940 P.2d 397 (Colo. 1997); Ahmad Bodaghi and State Board of Personnel, State of Colorado v. Department of Natural Resources, 995 P.2d 288 (Colo. 2000).

The Respondent is a burlesque show club/topless bar. It operates in the State of Colorado and employs in excess of 20 employees.

2

The Respondent does not have an Equal Employment Opportunity policy or employee handbook.  The Respondent does have a sexual harassment policy, which prohibits supervisors or managers from requesting sexual favors in exchange for influence regarding the terms and conditions of employment.   This policy also prohibits "sexually harassing conduct . . . whether physical or verbal, committed by supervisors or non-supervisory personnel . . . . [including] repeated offensive sexual flirtations; advances; . . . touching; . . . [and] continual or repeated verbal abuse of a sexual nature."

The record reflects that the Complainant was hired by the Respondent on or about June 3, 2014, as a Concierge.  The Respondent states that the Concierge position was a combination of Dancer/Stripper and Cocktail Waitress.  It states that the position was created to give upper echelon customers personal, VIP service.  The Complainant was discharged on or about October 3, 2014, for "stealing guests" from another employee's section.  The Complainant denies this allegation.  Regardless, she was rehired twelve days later, on October 15, 2014, as the Respondent stated that she was a good employee and wanted to provide her another chance.  The evidence indicates that a Concierge reports to the Floor Manager on duty.  From on or about March 8, 2015, until on or about May 21, 2015, Michelle Poague ("Poague") (female) (40 years of age or older), Supervisor, was responsible for the Complainant's schedule.  From on or about May 21, 2015, until she was discharged, Brian Barker ("Barker") (male) (under 40 years of age), Floor Manager, was responsible for the Complainant's schedule.

The evidence indicates that during the 2015 calendar year, the Complainant worked three days per week, primarily Wednesday, Thursday, and Friday, with the exceptions of the week of February 8, 2015, when she only worked Wednesday, the week of April 12, 2015, when she did not work Wednesday, and the week of April 19, 2015, when she worked Saturday instead of Wednesday.  Additionally, through May 2015, the Complainant worked the second Monday of each month, during a monthly cigar dinner hosted by the Respondent.  The evidence indicates that the Respondent scheduled two employees for this monthly event.  The Complainant acknowledges that her and Desiree LaFabre ("LaFabre") (female) (under 40 years of age), a former Concierge with the Respondent, both worked the Cigar Dinners prior to June 2015.

The Complainant alleges that on or about May 5, 2015, Randy Thornton ("Thornton") (male) (over 40 years of age), Floor Manager, sexually harassed her when he twice grabbed her buttocks and asked her to prove that she was wearing underwear.  The Respondent denies that Thornton grabbed the Complainant.  It states that on this date, Thornton was notified by a guest that the Complainant was not wearing undergarments and was flashing and allowing guests to put their hands under her dress.  The Colorado Liquor Code prohibits from employees exposing "any portion of the[ir] public hair, anus, cleft of the buttocks, vulva or genitals."  The Respondent

3

contends that Thornton's inquiry was to ensure that the Complainant was in compliance.

The Complainant denies that Thornton's inquiries were related to the Respondent's liquor license. The Complainant alleges that Thornton's inquiries were harassing and occurred on a daily basis. Barker states that Thornton was "pretty known" for sexual harassment. He stated to the Division in an interview, and in an affidavit, that he witnessed Thornton on several occasions ask the Complainant if she was wearing underwear. Jenny Martin (female) (40 years of age or older), a former Waitress with the Respondent, in an affidavit, also stated that she witnessed Thornton asking the Complainant on a daily basis if she was wearing underwear. LaFabre states that she did not witness Thornton ask the Complainant if she was wearing underwear, but states that she witnessed him ask this question of other female employees on a daily basis. Thornton denies ever asking the Complainant if she was wearing underwear.

Floor Manager Barker states that the Complainant would wear either a skirt or an evening dress, and that inquiring weather underwear was being worn was not necessary and "inappropriate." Hopi Mondale ("Mondale") (female) (40 years of age or older), Floor Manager, confirms that if an employee was wearing a dress, it would be inappropriate to inquire if such employee was wearing underwear. Wearing a dress would prevent exposure that would lead to a violation of the liquor code, described above.

The Complainant alleges that she mentioned Thornton's inquires to Poague at least twice during May 2015. Poague denies that the Complainant ever mentioned these comments to her.

The Respondent states that on or about May 28, 2016, during a Manager meeting, there was discussion about the possible elimination of the Concierge position and making these individuals Waitresses. Mondale stated that the demand for the services offered by the Concierge position dissipated. The position was subsequently eliminated on or about June 8, 2015, and Concierges were offered shifts as Waitresses.

On or about June 1, 2015, one week prior to the elimination of the Concierge positons, Barker posted the Concierge/Waitress schedule for the week of June 1st. The Complainant was scheduled as a Concierge on Thursday and Friday, but not Wednesday, and was not scheduled for the Cigar Dinner on Monday, June 8, 2015. The Respondent avers that Concierges/Waitresses do not have permanent schedules, but attempts to schedule them for the same nights per week when possible. Barker states that he is unsure why he did not schedule the Complainant for Wednesday of this week. LaFabre was scheduled as a Concierge on Saturday, for the bar on Sunday and Monday, and for the Cigar Dinner on June 8, 2015. LaFabre was scheduled for the monthly Cigar Dinner in May 2015, as well. Angela Milano ("Milano") (female) (under

4

40 years of age), was the Concierge on the schedule for this Wednesday, and Amanda Sneed ("Sneed") (female) (under 40 years of age) was scheduled for the June 2015 Cigar Dinner. The evidence indicates that there were four other Concierges/Waitresses that received at least one less shift for the week of June 1, 2015, than the week before, of whom were all under 40 years of age. The evidence also indicates, that prior to being discharged, for the week of June 8th, the Complainant was scheduled, as a Waitress, for Wednesday, Thursday, and Friday. LaFabre states that during this period of time, everyone's schedules were being changed.

Later that same day, the Complainant called Poague and complained that she was only scheduled for two shifts because Barker and LaFabre, whom she believed were in an intimate relationship, were "Ganging up" on her. Poague states that she asked the Complainant to address this concern with Barker, as he was responsible for the schedule.

The evidence indicates that the Complainant then called Barker. Barker states that during this conversation, the Complainant revisited past complaints about him (Barker) and LaFabre dating. This conversation escalated and Barker admits stating to the Complainant, "Shut the fuck up about [LeFabre], I'm not going to change the schedule. That's the way it's going to stay." After speaking with Barker, the Complainant called Poague once again, and informed her that Barker had "cussed" at her. Poague states that she then called Barker to discuss the situation. She claims that she counseled Barker regarding how he spoke to staff, and inquired if he was in fact dating LaFabre. He stated that he was not dating her. LaFabre also states that she was not dating Barker during this period of time. Poague asserts that she then reviewed the schedule and could not find evidence of Barker showing favoritism toward LaFabre.

On or about June 4, 2015, the Complainant complained to Mondale about Barker showing favoritism toward LaFabre regarding scheduling. Mondale states that she arranged for a meeting between the Complainant and LaFabre. Mondale states that she informed both of them that if the "drama" between them continued, one or both of them would be discharged. At this point, LaFabre left, and Mondale met with the Complainant and Barker. The Complainant states that prior to Barker joining the conversation, she informed Mondale that Thornton was making inappropriate inquires about her wearing underwear. Mondale denies that the Complainant mentioned these comments to her. The Respondent states that the Complainant proceeded to accused Barker of giving LaFabre special treatment.

The Respondent states that on or about June 6, 2015, LaFabre reported to Tyler Mintz ("Mintz") (male) (under 40 years of age), Supervisor, that she "did not feel safe" because of the Complainant's rumors and accusations and wanted to file a police report against her. The Respondent avers that it was LeFabre's concerns that incited

the Respondent's decision to discharge the Complainant two days later.  In an interview with the Division, however, LaFabre denies that she asked Mintz to file a police report.  She states that she was intimidated by Mintz into filing a police report against the Complainant.   On or about June 27, 2015, three weeks after the Complainant's discharge, she states that Mintz called her into a room with himself and two police officers and asked questions such as: "Don't you feel threatened?" "Are you sure you don't feel threatened?" and "Are you sure you feel safe?"  LaFabre states that she sensed that she was being coerced into filling a report, and then asked what she would receive in exchange for filing it.  She states that she asked Mintz to "stop hassling" her at work in exchange for filing a police report, for which she states he agreed.  Mintz denies that he coerced LaFabre into filing the police report or offering her anything in exchange for filing a police report.  Mintz admits that he asked LaFabre if she wanted to file a police report, but this was due to the "level of harassment" that was going on between the Complainant and LaFabre.  Barker, in an affidavit, stated that he witnessed Mintz direct LaFabre to report false information about the Complainant to the Glendale Police Department.

Mintz states that he is unsure about the discrepancies between the position statement, which states that LaFabre asked to file a police report on June 6, 2015, and the provided police report, which was dated June 27, 2015.

The police report states that: "[the Complainant] is bothering [LaFabre] on [Facebook]. . . . [The Complainant] goes into shotguns [sic] and makes her feel uncomfortable."  LaFabre states that she did report to the Respondent that the Complainant was causing issues, but she denies that she reported that she felt threatened by her.  She states that she merely reported to Mintz that the Complainant would visit the Respondent's location during her off-hours, sit with her friends in her section, and not order anything.

The Respondent states that the decision to discharge the Complainant was made at a Manager's meeting on or about June 8, 2015.  The Respondent asserts that Barker, Mintz, Mondale, Poague, and Thornton participated in the decision.  The Respondent asserts that the Complainant was "terminated after another employee, . . . LaFabre, advised that she felt unsafe working with [the Complainant]."  During an interview with the Division, Poague denies that the police report was the cause of the Complainant's discharge, and states that it was "just part of her file."  It is notable that the police report had not yet been made at this time.  She stated that she instructed the Complainant on or about June 4, 2015, that if she heard any more complaints about issues with LaFabre, that she would be discharged.  Poague states that the next day, she heard from another employee that the Complainant was "badmouthing" LaFabre.

Barker, in an affidavit states that the Respondent wanted newer or younger employees, however, states that the decision makers did not specifically mention the

6

Complainant's age when the decision to terminate her was made. Poague denies that the Complaint's age was discussed during this decision-making process.

On or about June 10, 2015, the Complainant arrived for her scheduled shift. Thornton informed her that her employment with the Respondent had been terminated. The Complainant states that Thornton informed her that "it was not working out."

Comparative data indicates that the Respondent currently employs 74 individuals, of whom 36 (48.6%) are female, 38 (51.4%) are male, 25 (33.8%) are 40 years of age or over, and 49 (66.2%) are under 40 years of age. The evidence indicates that beginning on or about June 8, 2015, the Respondent stopped scheduling the Concierge position. Three individuals, not included the Complainant, were affected by this change, of whom all (100%) were female, and all (100%) were under 40 years of age. The Respondent states that these individuals were offered positions as Waitresses. The Respondent currently employs 18 Waitresses, of whom all (100%) are female, three (16.7%) are 40 years of age or older and 15 (83.3%) are under 40 years of age. During the relevant period of time, the Respondent discharged five employees, of whom all (100%) were female, one (20%), the Complainant, was 40 years of age or older and four (80%) were under 40 years of age. The Respondent states that it received one other complaint of harassment against Thornton. It states that it investigated this allegation and found no evidence to substantiate the claim.

<u>Harassment by a Supervisor Not Resulting in Tangible Action/Sex:</u>

To prevail on a claim of discriminatory harassment by a supervisor, the evidence in the record must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was subjected to adverse treatment based on his/her protected class; (3) the treatment was severe or pervasive; (4) the treatment had the purpose or effect of creating a work environment that was both objectively and subjectively hostile, intimidating, or offensive; and (5) the Respondent knew or should have known of the treatment but failed to take prompt and remedial action.

The Complainant is a member of a protected class based on her sex (female). The Complainant alleges that Thornton repeatedly asked her if she was wearing underwear, and on one occasion, grabbed her buttocks. Thornton denies ever touching the Complainant, and there are no witnesses or other evidence to substantiate this allegation. However, Barker and Martin state that they witnessed Thornton frequently ask the Complainant if she was wearing underwear, and LaFabre witnessed Thornton subject other female employees to similar treatment. Barker states that Thornton asked this question so many times, that it was notable, and Martin confirms that it was asked daily. The Respondent contends that Thornton asked this question in order to ensure that the Complainant was not violating the Colorado Liquor Code. The evidence indicates that the Complainant wore either a dress or skirt while on-duty. Barker and Mondale confirm that it was unnecessary and

7

inappropriate to inquire if an employee was wearing underwear, when she was wearing a dress or skirt, as a dress or skirt satisfied the requirements of the Colorado Liquor Code. Thus, there is sufficient evidence that the Complainant was subjected to adverse treatment that was severe or pervasive, and created a work environment that was both objectively and subjectively hostile, intimidating, or offensive. Barker, a Floor Manager, had knowledge of this treatment. Thus, the Respondent knew or should have known of the treatment and failed to take prompt and remedial action. There is sufficient evidence that the Complainant was subjected to harassment by a Supervisor based on her protected class.

Terms and Conditions of Employment/Sex/Age:

To prevail on a claim of discriminatory terms and conditions of employment, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was subjected to adverse terms or conditions of employment; and (3) similarly situated employees not of the Complainant's protected class[es] were not subjected to such adverse terms/conditions.

The Complainant in a member of protected classes based on her sex (female) and age (over 40 years of age). The Complainant alleges that she was subjected to adverse terms or conditions of employment, as she was not given two shifts, June 3, 2015, and June 8, 2015, that she usually worked. The Respondent states that it does not have permanent schedules for its Concierges/Waitresses. During the week of June 1, 2015, there were four other Concierges/Waitresses, all of whom were less than 40 years of age, that received at least one less shift than the week before. LaFabre states that during this period of time, everyone's schedule was being changed. Thus, there is insufficient evidence to establish that similarly situated employees, not of the Complainant's protected classes, were not subjected to such adverse terms or conditions.

Harassment by a Supervisor Resulting in Tangible Action/Sex:

To prevail on a claim of discriminatory harassment by a supervisor that results in a significant change in employment status, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was subjected to adverse treatment based on his/her protected class; (3) the treatment was severe or pervasive; and (4) the treatment had the purpose or effect of creating a work environment that was both objectively and subjectively hostile, intimidating, or offensive.

The Complainant is a member of a protected class based on her sex (female). The Complainant alleges that Barker, implicitly required the Complainant to engage in sexual conduct as a condition of receiving her regular shifts. She alleges that Barker gave her regular shifts to LaFabre, whom she alleged was in a sexual relationship with Barker. Both LaFabre and Barker deny that they were in an intimate relationship, and

8

there is no evidence other than the Complainant's speculation to support this allegation. Even if they were, the evidence indicates that Barker did not show favoritism toward LaFabre. The shifts in question were on or about June 3, 2015, and June 8, 2015, which were given to Milano and Sneed respectively. The evidence indicates that these shifts were not given to LaFabre.[1] Additionally, as explained above, there were four other Concierges/Waitresses that received at least one less shift than the prior week. Thus, there is insufficient evidence to establish that the Complainant was subjected to harassment.

Demotion/Age:

To prevail on a claim of discriminatory demotion, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was performing satisfactorily; (3) the Complainant was demoted; and (4) the circumstances give rise to an inference of unlawful discrimination based on a protected class.

The Complainant is a member of a protected class based on her age (40 years of age and older). The Complainant alleges that she was demoted when the Concierge position was eliminated and offered a position as a Waitress. The Respondent states that the Concierge program was created to provide VIP guests in a specific section with table service. The Respondent states that customers' interest in this program waned; therefore, they eliminated this VIP section, and the need for specified Concierges ended. Waitresses provide table service throughout the entire club, and serve larger sections. Thus, there is insufficient evidence to establish that this change in position would qualify as a demotion. Regardless, this change also affected three individuals who were outside of the Complainant's protected class, therefore, there is insufficient evidence to establish that this action was taken because of her protected class.

Discharge/Age/Sex:

To prevail on a claim of discriminatory discharge based on age, the evidence must show that: (1) the Complainant is a member of a protected class; (2) the Complainant was performing satisfactorily; (3) the Complainant was discharged; and (4) the circumstances suggest that age was a determining factor in the discharge decision.

The Complainant is a member of protected classes based on her age (40 years of age and older) and sex (female). The Respondent contends that the Complainant was not performing satisfactorily, as she threatened a co-worker. The Respondent contends that on or about June 6, 2015, LaFabre told Mintz that she wanted to file a police

---

[1] LaFabre did work the June 8, 2015 Cigar Dinner. Two employees are assigned to this monthly event. The evidence indicates that LaFabre previously worked these events with the Complainant. While the Complainant was not scheduled for June 8, 2015, it was Sneed that was given this shift.

report because the Complainant "made her feel unsafe," and as a result, on or about June 8, 2015, the Respondent made a decision to discharge the Complainant. The referenced police report is dated June 27, 2016. LaFabre states that she did not feel threatened by the Complainant and stated that she was coerced into filing the police report. Barker corroborates LaFabre's statements. Poague states that the police report was merely a part of the Complainant's file, and not the reason for the Complainant's discharge. Though, as noted earlier, the police report did not exist at the time of the Complainant's discharge. Poague states that the Complainant was discharged because the Complainant continued to "instigate drama" with LaFabre after Poague warned her that doing so could result in termination. However, this justification was offered after the Respondent's Position Statement was received by the Division.

The Respondent's Position Statement emphasized that the Complainant was discharged for threatening LaFabre, which resulted in a police report being filed. The evidence supports that LaFabre did not feel threatened by the Complainant, and was coerced by the Respondent into filing a police report, which has subsequently used as justification for terminating the Complainant, even though it was not filed until three weeks after her termination. The Complainant was discharged on or about June 10, 2015. During the relevant period of time, five female individuals, including the Complainant, were discharged. The other four were all under the age of 40. While Barker states that the Respondent desired younger employees, and the Respondent's proffered reason for the Complainant's discharge appears to be pretexual, the there is insufficient evidence that age or sex was a determining factor in the Complainant's discharge. Thus, there is insufficient evidence to substantiate that the Complainant was discharged because of her protected classes.

Retaliation:

To prevail on a claim of discriminatory retaliation, the evidence must show that: (1) the Complainant (or an individual within the Complainant's zone of interest) engaged in protected activity, i.e., opposed unlawful discrimination or participated in an investigation thereof; (2) the Complainant was subjected to adverse treatment that would dissuade a reasonable person from engaging in protected activity; and (3) the Complainant was subjected to the adverse treatment because of the protected activity.

The Complainant alleges that she engaged in protected activity when she complained about being harassed by Thornton to Poague in or around May 2015, and to Mondale on or about June 4, 2015. Poague and Mondale both denied these conversations occurred, and there is no other evidence to substantiate the Complainant's claim.

The evidence show that the Complainant did engage in protected activity on or about June 1, 2015, and June 4, 2015, when she complained to Mondale, Poague, and

10

Barker, that Barker demonstrated favoritism toward LaFebre in assigning shifts, due to an alleged sexual relationship he had with LaFabre.

The Complainant alleges that on or about June 4, 2015, she was retaliated against for engaging in protected activity, when she was demoted from Concierge to Waitress. Being demoted would dissuade a reasonable person from engaging in protected activity. However, as explained above, there is no evidence to establish that LaFabre and Barker were involved in a relationship, or that the change from a Concierge to a Waitress was a demotion. Additionally, this move affected other individuals who had not engaged in protected activity. Therefore, there is insufficient evidence to establish that the Complainant was demoted in retaliation for engaging in protected activity.

The Complainant also alleges that on or about June 10, 2015, she was discharged in retaliation for engaging in protected activity. Discharging an employee would dissuade a reasonable person from engaging in protected activity. The fact that the Complainant was discharged within mere days after complaining of discrimination, in conjunction with the pretexual rationale proffered by the Respondent for her discharge constitutes sufficient evidence that the Complainant was discharged in retaliation for engaging in protected activity.

Based on the evidence contained above, I determine that the Respondent has violated C.R.S. 24-34-402, as re-enacted, in respect to one of the Complainant's claims of harassment, and her claim that she was discharged in retaliation for engaging in protected activity.

In accordance with C.R.S. 24-34-306(2)(b)(II), as re-enacted, the Parties hereby are ordered by the Director to proceed to attempt amicable resolution of these charges by compulsory mediation. The Parties will be contacted by the agency to schedule this process.

Based on the evidence contained above, I determine that the Respondent has not violated C.R.S. 24-34-402, as re-enacted, in respect to the Complainant's remaining claims of discrimination.

In accordance with C.R.S. 24-34-306(2)(b)(I)(A) and Rule 10.6(A)(1) of the Commission's Rules of Practice and Procedure, the Complainant may appeal the dismissal of this claim to the Commission within ten (10) days, as set forth in the enclosed form.

If the Complainant wishes to file a civil action in a district court in this state, which action is based on the alleged discriminatory or unfair practice that was the subject of the charge filed with the Commission, such must be done:

11

a. Within ninety days of the mailing of this notice if no appeal is filed with the Colorado Civil Rights Commission or,

b.    Within ninety days of the mailing of the final notice of the Commission dismissing the appeal.

If the Complainant does not file an action within the time limits specified above, such action will be barred and no State District Court shall have jurisdiction to hear such action [CRS 24-34-306(I)].

On Behalf of the Colorado Civil Rights Division

_Aubrey Denny Pearson_                    _11-8-2016_
Aubrey Elenis, Director                        Date
Or Authorized Designee

12

# CERTIFICATE OF MAILING

This is to certify that on <u>November 9, 2016</u> a true and exact copy of the Closing Action of the above-referenced charge was deposited in the United States mail, postage prepaid, addressed to the parties and/or representatives listed below.

CCRD Case Number:
**D20160048**

EEOC Charge Number:
**846-2015-30840**

Heather Price
10200 East Dry Creek Road, Unit 6310
Englewood, CO 80112

Bavaria Inn Restaurant
d/b/a Shotgun Willie's
490 South Colorado Blvd.
Glendale, CO 80246

Barbara Wyngarden
Mountain States Employers Council, Inc.
1799 Pennsylvania Street
PO Box 539
Denver, CO 80201

Jim Abrams
Jim Abrams, LLC
401 Westwood Drive
Denver, CO 80206

**David L. Martinez**
**Colorado Department of**
**Regulatory Agencies**
Division of Civil Rights
1560 Broadway, Suite 1050
Denver, CO 80202
www.dora.state.co.us